**In re John R. KELLY, Carolyn A. Kelly, Debtors.**

**No. 00–11742.**

United States Bankruptcy Court, S.D. Alabama.

Feb. 13, 2001.

---

Irvin Grodsky, Mobile, AL, for Debtors.

Charles Baer, Mobile, AL, for United States.

Jeffrey Hartley, Mobile, AL, for Chapter 13 Trustee.

## ORDER ON UNITED STATES' MOTION TO DISMISS CHAPTER 13 CASE AND MOTION TO CONSTRUE AND MODIFY PLAN

WILLIAM S. SHULMAN, Bankruptcy Judge.

This matter came before the Court on the United States' motion to dismiss the Debtors' Chapter 13 case and motion to construe and modify plan. Irvin Grodsky appeared for the Debtors; Charles Baer appeared for the United States and Jeffrey Hartley appeared for the Chapter 13 Trustee. The Court makes the following findings of fact and conclusions of law based on the pleadings, briefs, testimony, evidence and arguments of counsel:

### FINDINGS OF FACT

The Debtors, Carolyn and John Kelly (hereinafter collectively "the Kellys"), filed their Chapter 13 petition on May 3, 2000. They submitted their plan on the standard form subscribed by the Bankruptcy Court for the Southern District of Alabama. Paragraph 2a of the plan states (with emphasis added):

2.  From the payment so received, the Trustee shall make disbursement as follows:

a.  The following priority payments shall be paid in full:

Trustee's commission (monthly)

Attorney's fees (over 7 months) Internal Revenue Service (over 60 months) . . . [1]

---

1.  The words "Internal Revenue Service" and the number "60" appear to be typed onto the

Paragraph 5 of the Debtors' plan provides: "Other provisions: See attached."[2] The plan has a handwritten notation in the top right corner: " Page 1 of 2." The plan in the Court's file has a second page, which has a handwritten notation in the same position: "Page 2 of 2." The attachment to the plan reads as follows:

## CHAPTER 13 PLAN

The vehicles belonging to KLK Delivery listed on Exhibit "A" shall be transferred to the United States of America as the indubitable equivalent of a cash payment in the amount of $100,000.00 and the United States of America shall credit the Debtors' [sic] with $100,000.00 against the Debtors' federal tax liabilities in exchange for said vehicles. The Debtors shall deliver the vehicles to the Mobile Alabama office of the Internal Revenue Service on the 10th day following confirmation of the Plan unless the Internal Revenue Service directs a different location. Debtors shall be responsible for the cost of delivery of said vehicles to the Montlimar Drive, Mobile, Alabama office of the Internal Revenue Service. The Internal Revenue Service shall pay the cost for only delivery to any other location.

Betty Stalbert, a bankruptcy specialist with the New Orleans office of the Internal Revenue Service, testified that her duties as a bankruptcy specialist include reviewing chapter 13 plans and filing proofs of claim on the IRS's behalf.[3] She had worked with the IRS for 26 years and has been a bankruptcy specialist for one and half years. If Stalbert detects a problem with a plan under her review, she refers the matter to the U.S. Attorney's office in the appropriate state.

Stalbert reviewed the Debtors' chapter 13 plan in June 2000. Stalbert testified that when she saw paragraph 2a indicating that the IRS's claim would be paid in full, she did not check any of the other provisions of the Debtors' plan. Government Exhibit 1 is the IRS's copy of the Debtors' chapter 13 plan. Exhibit 1 is a single sheet with the information contained on Page 1 of 2 on the front, and the information contained on Page 2 of 2 on the back. The IRS's case history sheet on the Debtors' case indicates that Stalbert received the Debtors' plan on June 13, 2000, and that the plan listed the "IRS as priority & to be paid in full."[4]

Stalbert testified that she did not calculate the amount of the Debtors' plan payment over the 60–month life of the plan because paragraph 2a identified the IRS's claim as priority to be paid in full. In addition, she believed that the Chapter 13 Trustee would dismiss or convert the plan if the payment was not sufficient to meet the terms of the plan. She did not remember looking at the payment required by the plan. The Debtors' plan required them to pay $1,000.00 for 60 months for a total of $60, 000.00 to be paid into the plan. The IRS's proof of claim indicates liability in excess of $100,000.00. Stalbert did not recall looking at the dollar amount to be paid by the Debtors in their chapter 13 plan. She saw no provisions other than paragraph 2a that would affect the IRS. She stated that there was no attachment to her copy of the Debtors' plan. She did not know if there were additional provisions on the back of the plan. If she had seen the information on page 2 of 2 of the

---

form.

**2.** The words "See attached" appear to be typed onto the form.

**3.** The Court will refer to the United States as "the IRS" throughout this opinion.

**4.** See Government Exhibit 2.

Debtors' plan, she would have referred the plan to the U.S. attorney's office.

The IRS's case history indicates that Stalbert prepared a proof of claim for the IRS on May 30, 2000, claiming $128,073.76 and including $88, 820.079 in priority taxes and $39,252.97 in non-priority taxes. A notation indicated that the Debtors had not filed a 1999 tax return on that date. Stalbert added a notation on May 30, 2000, stating that she corrected the government's proof of claim to reflect a total of $160, 316.13 with $121,061.16 in priority taxes and $39,252.97 in non-priority taxes. She had not received a copy of the Debtors' chapter 13 plan at that time. Stalbert testified that she notified her supervisor of the claim and the Debtors' case was assigned to another bankruptcy specialist in the Birmingham office. Stalbert testified that the Debtors' case was no longer under her supervision after May 30, 2000. She discovered that the case had been reassigned on July 13, 2000. The IRS's copy of the Debtors' plan is stamped "May 31 2000 Special Procedures Staff Birmingham Alabama." Stalbert testified that the New Orleans Special Procedures Office of the IRS (her home office) did not receive a copy of the Debtors' plan until June 2, 2000.

The Debtors plan was confirmed as filed on June 29, 2000. The IRS Special Procedures office in Birmingham received a copy of the confirmation order on July 6, 2000.[5] Stalbert made an entry on the IRS case history that she received the confirmation order stating that the IRS would receive vehicles valued at $ 100,000.00 by the 10th day following the confirmation order. Stalbert testified that she contacted Mary Ann Capps, the bankruptcy specialist to whom the Debtors' case had been reassigned, and told her about the confirmation order. Stalbert faxed a copy of the Debtors' plan and the IRS's proof of claim to Capps on July 18, 2000. The IRS filed a motion to dismiss the Debtors' case and a motion to construe and modify the plan on August 8, 2000.

## CONCLUSIONS OF LAW

The IRS alleges that the Debtors' plan was at best ambiguous and at worst not filed in good faith. It seeks to modify the plan on grounds that the plan was contradictory, calling for full payment of the IRS's priority claim over the life of the plan on page one of the plan, and offering to turn over automobiles to the IRS as the indubitable equivalent value of $100,000.00 on page two. The IRS also seeks to dismiss the Debtors' plan on grounds that the Debtors sought to mislead the IRS by placing the provision about turning over the vehicles to the IRS on the second page of the plan.

■ The IRS filed a motion to dismiss the Debtors' case based on the theory that the plan was filed in bad faith. As an initial ruling, the Court finds no evidence of bad faith on the part of the Debtors or their counsel. The Debtors used the form authorized by this District to outline their Chapter 13 plan. The area allowed in paragraph 2 for treatment of priority claims did not have sufficient space for the Debtors to fully explain their treatment of the IRS's claim. As a result, the Debtors added a second page to the plan to outline their plan to turn over the vehicles to the IRS. The original plan contained in the Court's file has two pages that are clearly marked "Page 1 of 2" and "Page 2 of 2". There was no evidence that the Debtors sought to conceal the terms of their Chapter 13 plan from the IRS. Therefore, the Court finds that the Debtors' plan was not

5. See Debtor's exhibit 3.

filed in bad faith as to the IRS, and the IRS's motion to dismiss on these grounds is due to be denied.

■ The IRS asks the Court to modify the Debtors' Chapter 13 plan under 11 U.S.C. § 1329(a) to increase the Debtors' plan payment to provide for a payout of the IRS's claim within in the life of the plan. In the alternative, the IRS maintains that the Debtors' plan is contradictory as to paragraphs 2(a) and paragraph 5 of the plan. The IRS asks the Court to construe the plan's meaning, or to modify to allow cash payment of the IRS priority claim. The Debtors assert that the IRS has shown no grounds for modifying the plan, and that the plan is not contradictory or ambiguous.

Bankruptcy Rule 9024 adopts Rule 60 of the Federal Rules of Civil Procedure with some modifications. Under Rule 60(b)(1), "the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect". The IRS asked in its memorandum of law that its motion to construe the plan be treated as a motion for relief under Bankruptcy Rule 9024. Based on the evidence submitted and the IRS's request, the Court will treat the IRS's motion to construe the plan as a motion for relief from the confirmation order.

In *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), the United States Supreme Court held that "excusable neglect" under Rule 60(b)(1) should be determined from the totality of the circumstances surrounding the incident, including the following factors: the danger of prejudice to the debtor, the length of the delay and potential impact on judicial proceedings, the reason for the delay including whether it is within the reasonable control of the movant, and

whether the movant acted in good faith. *Pioneer*, 507 U.S. at 395, 113 S.Ct. at 1498. In determining that a creditor's failure to file a timely proof of claim was "excusable neglect" under Bankruptcy Rule 9006(b)(2), the *Pioneer* Court focused on inadequacies in the notice of the bar date, observing that the notice was "inconspicuous", "peculiar" and "left a dramatic ambiguity in the notification". *Pioneer*, 507 U.S. at 398, 113 S.Ct. at 1499.

The IRS's failure to correctly interpret the Debtors' plan was neglect under the *Pioneer* Court's definition of neglect as giving "little attention or respect" to a matter, or, leaving "undone or unattended ... due to carelessness." *Pioneer*, 507 U.S. at 388, 113 S.Ct. at 1494. Upon receiving the Debtors' plan, Stalbert read only paragraph 2a of the plan. As a result, she missed paragraph five of the plan referring to the attachment, which included the turn over provision that the IRS now objects to. She did not calculate the Debtors' payment over the life of the plan to make sure that the plan payments would satisfy the IRS's claim, a simple calculation that would have alerted her that the Debtors did not intend for their cash payments to satisfy the IRS's claim.

The next issue is whether the IRS's behavior was excusable. In *In re Norris*, 228 B.R. 27 (Bankr.M.D.Fla.1998), the bankruptcy court applied the factors enumerated by the *Pioneer* Court to determine whether the IRS was entitled to relief from an order confirming the debtor's chapter 13 plan which included a miscalculated amount for the IRS's claim. The *Norris* Court found that the notice of final claim was clear and unambiguous and that the IRS had ample opportunity to review its claim and confirm its calculations prior to entry of the confirmation order. The Court refused to vacate the confirmation order to allow the IRS to amend its claim. *Norris*, 228 B.R. at 32.

The situation at hand hinges on the Debtors' chapter 13 plan. Like the notice in *Pioneer*, the plan copy received by the IRS was ambiguous. Paragraph 2a of the Debtors' plan indicates that the IRS's priority claim will be paid in full through the Debtors' plan payments. However, paragraph five says "See attached" and the second page states that the Debtors will turn over certain trucks for the indubitable equivalent cash value of $100,000.00. The two provisions conflict, and are therefore ambiguous. *Voyager Life Ins. v. Whitson*, 703 So.2d 944, 948 (Ala.1997).

The ambiguity was not intended by the Debtors and is not due to any misconduct on their part. They took measures to insure that the provision was seen and properly noticed. However, the copy of the plan sent to the IRS defeated those measures. The law requires the Debtors, as drafter of the plan, to bear the ill effects of any ambiguity in its provisions. See *In re Fawcett*, 758 F.2d 588, 591 (11th Cir. 1985) ("[T]he debtor as draftsman of the plan has to pay the price if there is any ambiguity about the meaning of the terms of the plan.") The testimony at the hearing indicates that the IRS's representative did not see the turn over provision of the Debtors' plan until it was memorialized in the Court's confirmation order. Again, like *Pioneer*, the IRS's representative is not blameless in failing to read all provisions of the plan. However, the ambiguities created by the Debtors' plan made her neglect excusable.

Under factors enumerated by *Pioneer*, the Court finds that the IRS's failure to fully review the Debtors' plan was excusable neglect under Bankruptcy Rule 9024. The IRS filed its motions to dismiss and modify shortly after receiving the Court's confirmation order, so there was no substantial delay in addressing the matter. The Debtors may suffer some prejudice from having their confirmation vacated, however, the prejudice is outweighed by the injustice of depriving the IRS of a meaningful opportunity to object to the plan. There is also no evidence that the IRS has not acted in good faith. Based on the foregoing, the Court finds that the confirmation order of June 30, 2000 should be set aside and vacated. The Debtors will be allowed 14 days from the date of this order file a plan. A confirmation hearing should be rescheduled. It is hereby

ORDERED that the United States' motion to dismiss the Debtors' Chapter 13 case is DENIED; and it is further

ORDERED that the United States' motion for relief under Bankruptcy Rule 9024 is GRANTED, and the Court's order confirming the Debtors' chapter 13 plan shall be VACATED; and it is further

ORDERED that the Debtors shall have 14 days from the date of the order to file a plan; and it is further

ORDERED that a confirmation hearing shall be scheduled for hearing on Wednesday, March 28, *2001* at 10:30 a.m.